## STRYKER v. UNITED STATES.
### No. 1579.

Circuit Court of Appeals, Tenth Circuit.
March 24, 1938.

E. B. Evans, of Denver, Colo., for appellant.

Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

J. V. Stryker was tried, convicted and sentenced upon an indictment containing seven counts for violations of section 215 of the Criminal Code, 18 U.S.C.A. § 338.

Count one of the indictment alleged that the defendant unlawfully and fraudulently devised a scheme and artifice for obtaining money and property by means of false and fraudulent pretenses, representations and promises from W. G. Loberding and other persons to the grand jurors unknown; that the substance of the scheme so devised was that defendant would represent that he, as a contractor, was negotiating with the City of Ellis, Kansas, for a contract to improve and extend the water and sewage systems of that city; that he was in need of financial assistance to sustain him while negotiating such contract and to provide traveling expenses from Denver, Colorado, to Kansas City, Missouri, and from Kansas City, Missouri, to Ellis, Kansas; that as soon as he had procured such contract certain warrants of the City of Ellis would come into his possession on which he could obtain credit in a bank and from which credit he would repay to the persons to be defrauded the money advanced by them; that he had been awarded such contract; and that by means of letters and telegrams he would communicate with the persons to be defrauded and advise them of the progress he was making with the City of Ellis and its Board of Councilmen relative to such contract. That to induce and persuade the persons to be defrauded to advance money as aforesaid, it was further the intent of the defendant to make and the defendant did make, the following false and fraudulent pretenses and promises to the persons to be defrauded: that he had all the legal work done and was getting the Board of Councilmen of the City of Ellis to sign such contract with him; that the City Council of Ellis had agreed to the terms of such contract; that he had obtained such contract; that he was negotiating with a bonding company for a bond to secure the performance of such contract; that he had obtained warrants from the City of Ellis in connection with the contract, had registered them and had placed them in a bank and would obtain credit thereon.

It further alleged that the defendant was not negotiating with the City of Ellis

or anyone representing it during the times mentioned in the indictment for a contract to perform work on its water and sewage systems; did not have all the legal work done in connection therewith; had not obtained such contract; was not negotiating with a bonding company for a bond to secure the performance of such contract; had not secured warrants from the City of Ellis in connection with said contract on which he would obtain credit at a bank, and had not registered such warrants, and that each and every of such representations was false and untrue, known to the defendant to be false and untrue, and made by him with the intent to defraud the persons to be defrauded of their money and property.

It further alleged that the defendant, having devised and intended to devise such scheme and artifice, for the purpose of executing the same, on or about the second day of November, 1933, did knowingly, wilfully, unlawfully, and feloniously deposit and cause to be deposited in the United States Post Office at Kansas City, Missouri, a letter in a postpaid envelope addressed to Loberding at Denver, Colorado, and that such letter was delivered by the Post Office establishment to Loberding in the City of Denver in the state of Colorado; and that defendant did cause such letter to be delivered to Loberding through the United States mails in the state and district of Colorado.

Each of the remaining counts alleged by reference to count one the scheme and artifice to defraud and each set out a separate and distinct letter and alleged that for the purpose of executing the said scheme and artifice the defendant deposited said letter in the Post Office at Kansas City, Missouri, in a postpaid envelope addressed to Loberding at Denver, Colorado, and that it was delivered through the United States mails to Loberding at Denver, Colorado, and that defendant caused such letter to be delivered through the United States mails to Loberding in the state and district of Colorado.

The defendant by proper motion challenged below the sufficiency of the evidence to support verdicts of guilty and here urges as ground for reversal the denial of such motion.

The evidence for the government established these facts:

Loberding, an insurance broker residing in Denver, Colorado, had known the defendant for 12 or 15 years. Defendant had been engaged in the general contracting business. In October, 1933, Loberding and defendant had a conversation in Denver in which defendant stated to Loberding that he had received a telegram to come to Kansas City in connection with a contract at Ellis, Kansas, and showed Loberding the purported telegram, which was signed by one Myers and in substance read, "Come to Kansas City regarding contract at Ellis." Defendant further stated that he had had a previous contract at Ellis, that this was a continuation thereof, and that he needed money with which to go to Ellis in response to the telegram and requested Loberding to advance the money. Loberding advanced the money.

During the months of November and December, 1933, Loberding received from the defendant a series of letters, including the letters set out in the several counts of the indictment. Each of these letters was postmarked at Kansas City, Missouri, enclosed in a postpaid envelope addressed to Loberding at Denver, Colorado, and delivered to him through the Post Office establishment at Denver, Colorado. In the letters defendant represented to Loberding as facts, the matters and things alleged in the several counts of the indictment to be falsely represented and as having been falsely represented by the defendant to the persons to be defrauded. In response to each of such letters Loberding forwarded to defendant the advance of money requested.

Defendant was arrested by a Post Office Inspector at Chicago, Illinois, and admitted to such Post Office Inspector that he wrote and mailed the letters above referred to at Kansas City, Missouri.

Defendant did some public work for the City of Ellis in 1922. During the years 1932, 1933, and 1934 defendant did not appear before the City Council of Ellis, had no negotiations with the City of Ellis or its official representatives, received no warrants from the City of Ellis, and presented no warrants from the City of Ellis for registration.

Defendant testified that he had known Loberding for 8 or 10 years and had had dealings with him in connection with securing contracting work and financing mining propositions. He testified that he and Loberding were partners; that Loberding had agreed to put up expense money and

that he had agreed to furnish his time and that they were to split any profits on an equal basis. He enumerated several projects which they had carried on together prior to the Ellis deal and stated that the Ellis deal was a partnership deal, not in connection with city work, but in connection with contracting work for a private concern and that the purpose was to raise money to finance the mining ventures.

The letters above referred to definitely represented that the negotiations and the contract were with the City of Ellis.

Loberding denied that he and the defendant were partners; stated that he had advanced money to defendant from time to time in the past; that at the time of the conversation above referred to between him and the defendant the latter was broke and he advanced the additional money to enable the defendant to get back on his feet and repay the sums previously advanced.

On being advised by a Post Office Inspector in 1934 that Loberding had turned the matter over to the Post Office authorities, the defendant stated, "Well, why didn't he keep his shirt on? I would have paid him by the last of this week."

We think it plain from the foregoing that the several charges alleged in the indictment were amply supported by the evidence.

Defendant urges as error the failure of the court to charge the jury that if his acts in writing the letters were as fairly consistent with innocence as with an intent to defraud, then its verdict should be not guilty.

Where the evidence is wholly circumstantial, or both circumstantial and direct, the substance of the requested instruction ordinarily should be included in the charge. McLendon v. United States, 6 Cir., 13 F.2d 777, 779. We think it was here. The court specifically charged the jury that in order to convict it must find the defendant intended to devise and did devise the alleged scheme to defraud, substantially as charged in the indictment; and that the defendant was presumed to be innocent until his guilt was established beyond a reasonable doubt. See McLendon v. United States, supra; State v. Farris, 48 Idaho 439, 282 P. 489, 491. Furthermore, there was direct evidence that the representations set out in the indictment were made, that they were false, that they were made under such circumstances that the defendant must have known they were false, and that they were made for the purpose of obtaining money from Loberding. Defendant admitted writing the letters. They wholly refuted his explanation that the contract involved was a private contract. Thus it appears that the facts and circumstances upon which the government relied to establish the scheme to defraud were not refuted by any substantial evidence and were wholly inconsistent with any hypothesis of innocence. If the jury believed this evidence it was subject to but one construction. Under such circumstances it was proper to refuse the requested instruction in the form tendered. Corbett v. United States, 8 Cir., 89 F.2d 124, 128; Gurera v. United States, 8 Cir., 40 F.2d 338, 340.

Defendant further urges that the court erred in refusing to give the following requested instructions:

"If you find from the evidence that the defendant and W. G. Loberding were partners at the time of the writing of the letters set forth in the indictment then you should find the defendant not guilty."

"In determining whether or not the defendant and W. G. Loberding were partners you are instructed that if you find from the evidence that with reference to the securing of construction work or the financing of various mining properties the defendant and said W. G. Loberding were to share the profits and losses then you are instructed that said W. G. Loberding and the defendant were partners."

"If you find from the evidence that the defendant and W. G. Loberding were partners you are instructed that one partner cannot arrest the other partner for matters arising out of such partnership but the said W. G. Loberding's only remedy is through an accounting in a suit in equity."

The elements of the offense charged are (1) the formation of a scheme or artifice to defraud and (2) the use of the mails for the purpose of executing or attempting to execute such scheme or artifice. The latter element is the gist of the offense. Rude v. United States, 10 Cir., 74 F.2d 673, 675, and authorities there cited.

We are not here concerned with civil liability as between partners. If one per-

son devises a scheme or artifice to defraud in order to obtain money or property of another, by means of false or fraudulent pretenses, representations or promises, and for the purpose of executing such scheme or artifice uses the United States mails, he commits the offense defined in section 338, supra, and the fact that a partnership relation exists between the person committing the offense and the person to be defrauded does not absolve the former from criminal responsibility.

 The requested instructions are apparently based on the general rule that an action at law by one partner against his copartner will not lie on a claim growing out of the partnership transactions until there has been an accounting in equity or a complete settlement of the partnership affairs,[1] and that one partner may not instigate a criminal prosecution against the other partner on account of matters arising out of partnership transactions.[2] To this general rule there are certain well recognized exceptions, one being where one partner has been guilty of fraudulent misconduct toward another partner with respect to the partnership relations, to the injury and detriment of the latter.[3]

Furthermore, assuming that Loberding intended to secure and carry out the contract with the City of Ellis as a joint venture with defendant, the evidence clearly established that the contract with the city was wholly fictitious and that the funds advanced by Loberding to defendant were not used by him to carry out the joint venture since it had no existence in fact. It seems wholly illogical to us to hold that a partnership relation would absolve one from criminal responsibility where the venture in which the partnership was to engage had no existence in fact and one partner was induced to agree to enter into the relationship and advance funds to the other partner to be used in carrying out such venture, by false and fraudulent representations as to the existence of the venture and use to be made of the funds advanced.

Finally, the gist of the offense is the use of the mails, and not the scheme to defraud. The purpose of the statute is to prohibit the use of the Post Office establishment in furtherance of schemes and artifices to defraud others of their money and property, and one who so uses the United States mails commits an offense against the United States.

We conclude, therefore, that the requested instructions were properly denied.

We are convinced that the record discloses no substantial error and that the evidence clearly established the guilt of defendant.

The judgment is affirmed.

---

[1] Procter & Gamble Co. v. Powelson, 2 Cir., 288 F. 299, 303;

Pote v. Philips, 19 Fed.Cas. p. 1129, No. 11,316, 5 Cranch, C.C. 154;

Halderman v. Halderman, 11 Fed.Cas. p. 177, No. 5,909;

Pugh v. Newbern, 193 N.C. 258, 136 S. E. 707, 708, 709, 58 A.L.R. 617.

[2] Pugh v. Newbern, supra;

Smith v. Small, 54 Barb., N.Y., 223;

Cary v. Williams, 8 N.Y.Super.Ct. 667, 1 Duer 667.

[3] Pugh v. Newbern, supra;

Nicholas v. Hadlock, Mo.App., 180 S.W. 31;

Gilliam v. Loeb, 131 Mo.App. 70, 109 S.W. 835, 838, 839, 840;

Lonergan v. Lonergan, 60 Kan. 855, 55 P. 851;

Rice v. Culver, 32 N.J.Eq. 601;

Bowman v. Sedgwick, Iowa, 82 N.W. 491;

Note, 21 A.L.R. p. 125.