E. BROWN CROSBY v. WILLIAM H. BOWERS AND GARY R. KUZMA

No. 8728SC34

(Filed 20 October 1987)

**1. Partnership § 6— action against partners—partnership agreement as express personal contract upon which to sue**

Though a partner generally may not sue another partner until there has been a complete settlement of the partnership affairs and a balance struck, an exception to the rule is that a partner may maintain an action against his co-partner on claims upon express personal contracts between the partners; therefore, plaintiff could maintain, an action against defendants because the partnership agreement upon which the action was based was an express personal contract between the partners.

**2. Partnership § 6— actions as breach of partnership agreement—materiality—willfulness**

Whether plaintiff's actions constituted an antecedent breach of a partnership agreement, whether the alleged breach was material, and whether defendants' actions constituted a willful breach, were issues of fact which should be submitted to the jury.

**3. Partnership § 6— partnership agreement—meaning of "termination"—enforcement of non-competition clause**

The parties in their partnership agreement intended the word "termination" to refer to dissolution, and the plaintiff, pursuant to the terms of the agreement, could enforce the non-competition clause upon dissolution of the partnership.

**4. Partnership § 6— dissolution action—findings unsupported by evidence**

The trial court erred in finding as a fact that plaintiff's filing of the complaint was an expression of his will to dissolve the partnership in question, since the evidence was that plaintiff filed the complaint with the clear intention of dismissing defendants from the partnership and then dissolving the partnership.

**5. Partnership § 6— dissolution action—instructions on breach of partnership agreement improper**

The trial court erred in giving the jury instructions which implied that any breach of a partnership agreement by defendants, whether or not the breach was material, precluded defendants from obtaining a judicial dissolution.

**6. Partnership § 6— dissolution action—instructions on breach of partnership agreement improper**

The trial court's instructions which implied that plaintiff must have breached the partnership agreement as a prerequisite to judicial dissolution were erroneous. N.C.G.S. § 59-62(a)(3) and (4).

APPEAL by plaintiff and defendants from *Ferrell, Judge.* Judgment entered 12 June 1986 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 31 August 1987.

Plaintiff E. Brown Crosby and defendants William H. Bowers and Gary R. Kuzma are partners in the Asheville Hand Center, a medical partnership. They are also partners in a real estate partnership called ALOK. ALOK obtained its funds from the Asheville Hand Center and spent those funds on the real estate affairs of the Asheville Hand Center.

In 1975, plaintiff opened a hand surgery practice and later hired James S. Thompson, another hand specialist. Thompson eventually entered into a partnership with plaintiff which became the Asheville Hand Center. Plaintiff and Thompson were also partners in ALOK. In 1982, defendants Bowers and Kuzma became partners in the Asheville Hand Center. Pertinent sections of the partnership agreement between the four men are as follows:

> 10. Each partner shall, at his own expense, unless mutually agreed otherwise, pay for books, publications, gifts, entertainment expenses, dues, home telephone, expenses of his home office. . . .

> 11. (a)(2) The managing partner shall receive 2% of annual net profits. This shall be treated as a regular partnership expense.

> . . . .

> 13. The managing partner shall maintain or cause to be maintained such books of account and other necessary financial records which will accurately reflect all the transactions and business of the partnership. Such records shall be kept in the partnership's offices and shall be at all times available for inspection or examination by any partner or his duly authorized agent. . . .

> 14. All partnership monies and funds shall be promptly deposited in [the] partnership account(s). Each partner's signature shall be an authorized signature on partnership accounts. However, it is recognized that to properly run the partnership one partner should be responsible for managing

partnership affairs. Thus, unless designated otherwise by the managing partner, the managing partner shall sign all checks, drafts, etc., on the partnership accounts. Any check payable to or for the benefit of a partner, individually shall be co-signed by all partners or, in the absence of a partner, that partner's legal representative.

15. The partners shall mutually consult with each other in all matters of partnership policies, procedures and business. E. Brown Crosby is designated the managing partner. Equipment or other items purchased by the partnership shall belong to the partnership.

In 1985, Thompson withdrew from the partnership. Shortly thereafter, serious disputes arose between the remaining partners concerning personnel policies, salary and operating expenses of the Asheville Hand Center.

On 14 August 1985, defendants suspended plaintiff's authority as managing partner and cancelled his authority to write checks on the partnership accounts. Defendants advanced as a justification for this action that plaintiff had 1) used partnership funds to pay non-partnership expenses, 2) overpaid himself for honorariums inconsistent with the partnership agreement, 3) used partnership assets in pursuit of personal gain, and 4) taken action on behalf of the Asheville Hand Center without authorization.

Plaintiff then notified defendants that they had breached the partnership agreement and were subject to dismissal under section 20 of the agreement which states:

A partner shall be dismissed from the partnership if he ceases to be licensed to practice medicine in the State of North Carolina, or if, by gross negligence or wilfullness, breaches any condition of this Agreement, or if he declares or is adjudged bankrupt or enters into an arrangement for the benefit of creditors, or if he attempts to assign his partnership interest or if his partnership interest is attached or levied upon by a creditor.

*    *    *    *

Upon termination of the partnership, all partnership records, books of account, case histories and patient lists, and the telephone number(s) shall remain the property of Crosby.

Upon termination for reasons of a partner's permanent disability or retirement, the partnership shall purchase his disabled or retiring partner's interest in the same manner and upon the same terms as though that partner had died.

Upon termination for reasons other than a partner's death, disability or retirement, the partnership shall purchase the partner's interest in the same manner and upon the same terms as though the partner had died.

Any termination for whatever reason or subsequent purchase shall not release any partner of his responsibilities and liabilities as set forth in Paragraph 9 of this Agreement.

It is a condition of this Agreement that in the event any partner leaves the partnership, voluntarily or involuntarily, by mutual cancellation or otherwise, such partner shall not engage in the practice of medicine, whether as a sole proprietor, partner, employee or otherwise, within a 100 mile radius of the City of Asheville, North Carolina, for a period of three (3) years after the date of such termination. This condition has been effective since July 1, 1976, and shall continue during this Agreement and for a three (3) year period after termination of the partnership.

Plaintiff filed the present action seeking specific performance of the partnership agreement and the enforcement of the non-competition clause in section 20. Defendants filed an answer and a counterclaim seeking a declaratory judgment determining the rights of the partners in the partnerships and also sought a judicial dissolution pursuant to G.S. 59-62(a).

The case came on for trial before Judge Ferrell sitting with a jury. At the close of plaintiff's evidence, the trial judge granted defendants' motion for a directed verdict. The remainder of the trial concerned defendants' counterclaim. At the close of all the evidence, the following issues were submitted to and answered by the jury:

1. Has E. Brown Crosby committed such conduct as tends to affect prejudicially the carrying on of the business of the Asheville Hand Center partnership?

Answer: No

2. Has E. Brown Crosby willfully committed breaches of the partnership agreement?

   Answer: No

3. Has E. Brown Crosby persistently committed breaches of the partnership agreement?

   Answer: No

4. Has E. Brown Crosby conducted himself in matters relating to the partnership business of the Asheville Hand Center such that it is not reasonably practicable for William H. Bowers and Gary R. Kuzma to carry on the business in partnership with him?

   Answer: No

An estoppel issue requested by plaintiff was not reached.

Subsequently, a separate proceeding was held with respect to the propriety of entering a dissolution of the Asheville Hand Center and ALOK pursuant to G.S. 59-62(a)(6). However, the trial court determined that defendants were not entitled to a dissolution of the partnerships pursuant to that statute.

On 12 June 1986, the trial court entered a judgment stating that it had "considered a determination of the relative rights of the Partners in ALOK and Asheville Hand Center." The judgment included the following findings of fact:

3. The filing of the Complaint on August 23, 1985 by the Plaintiff was an expression of the will of the Plaintiff to dissolve Asheville Hand Center since the relief sought by the Complaint would have resulted in a dissolution of the Partnership.

4. The filing of the Answer and Counterclaim by the Defendants was an expression of the will of the Defendants to dissolve ALOK and Asheville Hand Center since the relief sought would have resulted in a dissolution of the Partnerships.

   . . . .

6. The provisions of the Asheville Hand Center Partnership Agreement prohibiting a Partner from engaging in the

practice of medicine within a one hundred (100) miles radius of the City of Asheville, North Carolina, for a period of three (3) years after the date of termination of the Partnership, did not provide that such provisions would inure to the benefit of any Partner following the dissolution of the Partnership or would be binding on any Partner following dissolution of the Partnership.

The Court then concluded as a matter of law:

THAT Asheville Hand Center and ALOK were Partnerships at will and that the filing of the Complaint on August 23, 1985 was an expression of the will of the Plaintiff to dissolve Asheville Hand Center consistent with the provisions of N.C.G.S. 59-61(1)(b); and that the filing of the Answer and Counterclaim was an expression of the will of the Defendants to dissolve the Partnership, ALOK, consistent with the provisions of N.C.G.S. 59-61(1)(b); and that the filing of the Answer and Counterclaim was a concurrence by the Defendants in the Plaintiff's expression of will to dissolve Asheville Hand Center; and that both of said Partnerships should be dissolved; and it is further concluded that neither the Plaintiff or the Defendants should be prohibited from the practice of medicine within a one hundred (100) mile radius of the City of Asheville, North Carolina, for a period of three (3) years following the dissolution of the Partnership; and it is further concluded that upon termination of the Partnership, all Partnership records, books of account, case histories and patient lists and the telephone number(s) of Asheville Hand Center Partnership shall remain the property of the Plaintiff; and it is further concluded that Asheville Hand Center and ALOK should be terminated in accordance with the provisions of Chapter 59 of the North Carolina General Statutes.

From the judgment of the trial court, both plaintiff and defendants appeal.

*Ronald W. Howell; and Long, Parker, Payne & Warren, by Robert B. Long, Jr., for plaintiff.*

*Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, by John W. Ervin, Jr. and Sam J. Ervin, IV, for defendants.*

ARNOLD, Judge.

Both plaintiff and defendants attack various aspects of the trial and judgment in this case. Assignments of error by both parties have merit and demand that we reverse the judgment of the trial court and remand the case for a new trial.

## I.

Plaintiff contends that the trial court erred in granting defendants' motion for a directed verdict. We agree.

A motion for a directed verdict presents the question whether the evidence, when considered in the light most favorable to the nonmoving party, is sufficient for submission to the jury. *Kelly v. International Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). At trial, plaintiff presented evidence that defendants breached the partnership agreement when they suspended his authority as managing partner, suspended his management fee and cancelled his authority to write checks on the partnership accounts. This evidence is sufficient for submission to a jury for a determination of whether defendants willfully breached the partnership agreement.

Defendants, however, assert that the directed verdict was properly granted and list the following alternative reasons in support of their position: 1) plaintiff lacked standing to sue defendants; 2) plaintiff was unable to prosecute the action individually; 3) there was an antecedent breach of the agreement by plaintiff; and 4) there was insufficient evidence of a *willful* breach by defendants.

[1]   With respect to the issue of plaintiff's standing to sue, *Pugh v. Newbern*, 193 N.C. 258, 136 S.E. 707 (1927), is controlling. In *Pugh*, our Supreme Court stated the general rule that one partner cannot sue another partner at law until there has been a complete settlement of the partnership affairs and a balance struck. The Court added, "[T]here are, however, well established exceptions to the general rule. A partner may maintain an action at law against his copartner upon claims growing out of the following state of facts: . . . 3. Claims upon express personal contracts between the partners." *Id.* at 261, 136 S.E. at 708-09. The partnership agreement in the present case is an express personal contract between the partners. Thus, plaintiff has the requisite

standing to maintain an action against defendants. Furthermore, defendants' position that plaintiff was unable to prosecute the action individually is untenable.

[2]  Regarding the alleged antecedent breach of the agreement by plaintiff, the general rule governing contracts requires that if either party commits a material breach of the contract, the other party should be excused from the obligation to perform further. *Coleman v. Shirlen*, 53 N.C. App. 573, 281 S.E. 2d 431 (1981). Whether plaintiff's actions in the present case constitute a breach of the agreement, and whether the alleged breach was material, is an issue of fact that should be determined by the jury on remand if defendants assert antecedent breach as a defense to plaintiff's claim. Additionally, the question whether defendants' actions constitute a *willful*, i.e. intentional, breach is a question of fact for the jury. *See id.*

If the jury finds that defendants willfully breached any condition of the agreement, the trial court must then apply section 20 of the agreement in order to determine the rights of the parties. Section 20 provides that a partner shall be dismissed from the partnership if he willfully breaches any condition of the agreement. It further provides that "[u]pon termination for reasons other than a partner's death, disability or retirement, the partnership shall purchase the partner's interest in the same manner and upon the same terms as though the partner had died." Section 19 of the agreement provides a formula for the surviving partners to purchase a deceased partner's interest.

[3]  Under the Uniform Partnership Act, "termination" is used to designate the point in time when all the partnership affairs are wound up. 2 Cavitch, *Business Organizations* § 29.01 (1984). It is clear that the parties in the case *sub judice* did not use the word "termination" in its technical sense because it would be impossible for a partnership to take any action once it has been terminated. Accordingly, it is obvious that the parties intended "termination" to refer to dissolution.

It is a general rule of contract law that a contract must be construed as a whole, considering each clause and word with reference to all other provisions and giving effect to each whenever possible. *Marcoin, Inc. v. McDaniel*, 70 N.C. App. 498, 320 S.E. 2d 892 (1984), *disc. rev. denied*, 312 N.C. 797, 325 S.E. 2d

631 (1985). With this in mind, section 20 of the agreement is unambiguous and provides that upon dissolution the partnership shall purchase the interest of the withdrawing partner. Therefore, if the jury finds that defendants willfully breached the agreement, plaintiff should be permitted to dismiss defendants from the partnership and purchase their interests pursuant to the agreement. At that point, the partnership would then be dissolved since a partnership consisting of one person cannot continue to exist. G.S. 59-36(a). Under these circumstances, the non-competition covenant would become effective.

Even if the jury finds that defendants did not breach the agreement and that plaintiff did not commit an antecedent breach, the inquiry varies only slightly. Since "termination" as used in the agreement actually refers to dissolution, it is clear that defendants could have dissolved the partnership at any time but that they would have been subject to the terms of section 20. Thus, in this situation (unless the trial court dissolves the partnership under G.S. 59-62) plaintiff would also be allowed to purchase defendants' interests and enforce the non-competition clause.

Plaintiff's remaining assignments of error concern the judgment entered by the trial court. Without addressing each assignment individually, we hold that the portion of the judgment in which the trial court made findings of fact and conclusions of law in determining the rights of the partners cannot stand.

[4] The trial court found as a fact that "[t]he filing of the Complaint . . . by the Plaintiff was an expression of the will of the Plaintiff to dissolve Asheville Hand Center since the relief sought by the Complaint would have resulted in a dissolution of the Partnership." Findings of fact made by the trial court have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support them. *Henderson County v. Osteen*, 297 N.C. 113, 254 S.E. 2d 160 (1979). The above finding of fact, however, is not supported by evidence in the record. Plaintiff filed the complaint with the clear purpose and intent of dismissing defendants from the partnership. There is no evidence that plaintiff's act of filing the complaint expressed his will merely to dissolve the partnership. Plaintiff intended that the partnership be dissolved *only after* dismissing defendants from the partnerships.

Therefore, in light of the fact that the directed verdict was improperly granted and in view of the above, the portion of the judgment in which the court made a determination of the rights of the partners is reversed.

## II.

[5]  The court submitted issues to the jury concerning defendants' counterclaim and concluded that defendants were not entitled to a judicial dissolution. Defendants contend that the trial court erred "by instructing the jury that any breach of the partnership agreement on the part of [defendants] precluded judicial dissolution of the Asheville Hand Center and ALOK since the instruction in question was not an accurate statement of the law arising upon the evidence." We agree.

As stated previously, the general rule governing contracts requires that if either party commits a *material* breach of the contract, the other party should be excused from the obligation to perform further. *Coleman*, 53 N.C. App. at 573, 281 S.E. 2d at 431.

The trial court instructed the jury as follows:

Before Bowers and Kuzma can prevail, they must satisfy you, the jury, by the greater weight of the evidence that one or more of the causes provided by North Carolina statutes or law for dissolution by judicial decree exists, and that they, themselves, have fully and fairly performed the partnership agreement, because one who has not has no standing in court to enforce any rights under the agreement.

This instruction implies that any breach of the agreement by defendants, whether or not the breach was material, precludes defendants from obtaining a judicial dissolution. Defendants were prejudiced by this instruction. On retrial, the trial court shall instruct the jury that a breach by defendants must be material before defendants are precluded from obtaining a judicial dissolution.

[6]  Defendants also contend that the trial court erred "by instructing the jury that it could not answer the first or fourth issues in the affirmative unless it found by the greater weight of the evidence that Crosby had breached the partnership agreement since the trial court's instruction did not constitute an ac-

curate statement of the law arising upon the evidence." We agree.

G.S. 59-62(a)(3) and (4) state:

> On application by or for a partner the court shall decree a dissolution whenever:

> (3) A partner has been guilty of such conduct as tends to affect prejudicially the carrying on of the business,

> (4) A partner willfully or persistently commits a breach of the partnership agreement, or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him.

The trial court's instructions implied that the first and fourth issues submitted to the jury required a breach of the partnership agreement by plaintiff. The statute does not require a breach of the partnership agreement as a prerequisite to judicial dissolution. On retrial, the jury instructions shall be altered to reflect this.

Concerning defendants' remaining assignments of error, we have examined them and have determined them to be without merit.

Accordingly, upon remand if the trial court concludes that the facts as determined by the jury entitle defendants to a judicial dissolution under G.S. 59-62, plaintiff would not be able to enforce section 20 even if the jury also finds that defendants willfully breached the agreement. In other words, the only means by which defendants can circumvent section 20 is for the trial court to judicially dissolve the partnership. Otherwise, section 20 governs the rights of the parties. Therefore, the judgment of the trial court is reversed and the case is remanded for a new trial on both parties' claims.

As a final note, the broadside attacks by counsel on each other within their briefs are improper. "The function of all briefs . . . is to define clearly the questions presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon." App. R. 28(a). We caution counsel that personal attacks and trivial

verbiage are inappropriate in appellate briefs and should not be repeated.

Reversed and remanded.

Chief Judge HEDRICK and Judge EAGLES concur.